UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v.

PHILLIP DAVID FUSSELL

Case No.     5:08-cr-5-Oc-10GRJ

### REPORT AND RECOMMENDATION[1]

Pending before the Court is Defendant's Motion To Suppress Physical Evidence (Doc. 33) to which he United States has filed a Response In Opposition. (Doc. 42.) An evidentiary hearing was held before the undersigned on June 18, 2008 and, therefore, the matter is ripe for consideration. For the reasons discussed below, Defendant's Motion To Suppress Physical Evidence is due to be **DENIED**.

### I. Introduction

This case involves a three count indictment against Defendant charging the Defendant with: (1) conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture and substance containing methamphetamine in violation of 21 U.S.C. § 846, (2) possession with intent to distribute a quantity of a mixture and substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and (3) possession of a firearm in furtherance of a drug trafficking offense in violation of 18

---

[1] Specific, written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days after service of this document. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

U.S.C. § 924(c). Defendant requests the Court to suppress from use in evidence all firearms and all physical evidence, including the methamphetamine seized in this case, during the execution of a state search warrant at the Defendant's residence in Sumter County, Florida. Relying upon *Franks v. Delaware*[2] the Defendant contends that the affidavit for search warrant submitted to the state judge contains material omissions which would have prevented a finding of probable cause had the omitted information been included in the affidavit.

## II. Evidence And Testimony

The Defendant called Detective Angela Wilkinson, Special Agent Gary Sams and Agent Florentino Rosales[3] as witnesses. The substance of the testimony provided by the witnesses is as follows.

Detective Angela Wilkinson has been a law enforcement officer with the Sumter County Sheriff's Office ("SCSO") for the past seven and a half years and was the affiant who executed the affidavit in support of search warrant and who obtained the search warrant in this case from the state court judge. For the past three years Detective Wilkinson has been a detective and during the time period relevant to this case she has been assigned to the Special Investigations Squad at the SCSO.

Detective Wilkinson became involved in this case on February 21, 2007 when she was contacted by the Citrus County Sheriff's Office Vice/Narcotics Unit who had

---

[2] 438 U.S. 154 (1978).

[3] The only testimony provided by Agent Rosales, a DEA task force agent, was to confirm that the diagram of the interior of Defendant's residence was sketched by Castillo and not by the agents based upon Castillo's description.

requested assistance in conducting surveillance of Heather Mount ("Mount"), who Citrus County law enforcement believed was in route to purchase two ounces of methamphetamine from an individual named "Davy" in Webster, Florida. Detective Wilkinson - with other SCSO law enforcement officers - observed Mount driving a green Ford Escort and followed her through Sumter County[4] and eventually to a residence located at 12255 CR 727, which was owned by Phillip David Fussell, the Defendant in this case.  Detective Wilkinson personally observed Mount drive through the gate of Defendant's residence, park her vehicle, exit the vehicle and enter the Defendant's residence. A short while later Mount came out of the house, got into her vehicle and left the premises. Mount was followed back to her residence in Citrus County where Citrus County law enforcement obtained and executed a search warrant on Mount's residence. During the execution of the search warrant at Mount's Citrus County residence, law enforcement found approximately 28 grams of methamphetamine in Mount's purse. Mount told Citrus County officers executing the search warrant that she had purchased the methamphetamine from "Davey" in Webster, Florida. Detective Wilkinson testified that she knew "Davey" was the nickname used by the Defendant in this case.

Two days later - and as part of a completely unconnected investigation - Detective Wilkinson became involved with the Defendant's residence again. On February 23, 2008 Detective Wilkinson (and other officers) were requested to meet with agents from the Drug Enforcement Administration to respond to a residence at 3083

---

[4] Detective Wilkinson described the route, which included a stop in a parking lot of an auto supply store. According to Detective Wilkinson, when Mount stopped at the parking lot for about fifteen minutes Mount did not leave her vehicle and did not have any contact with other individuals while in the parking lot.

County Road 214, in Oxford, Sumter County to recover a large quantity of methamphetamine that had been discovered during a consent search of the residence. Detective Wilkinson was advised by Special Agent Gary Sams of the DEA that the DEA had arrested Exael Castillo-Pineda ("Castillo"), a Mexican male, from whom the DEA had previously recovered a large quantity of methamphetamine.  The residence in Oxford was Castillo's residence and during a consent search the DEA found eight pounds of methamphetamine. Additionally, during the search of Castillo's residence, law enforcement officers found a ledger detailing drug transactions. One of the ledger entries in Spanish reflected a drug transaction with "David" from Webster and noted that "David gave $15,000.00." During questioning Castillo told the DEA that the Davey in Webster was the Defendant in this case. Castillo told the DEA agents that he had delivered over fifty pounds of methamphetamine to the Defendant over the course of three months and that most recently on February 23, 2008 he had delivered to the Defendant one pound of methamphetamine for $15,000 and that on February 20, 2008 he had also delivered to the Defendant at his residence one pound of methamphetamine for $15,000. Agent Sams advised Detective Wilkinson that to corroborate Castillo's information, Castillo had taken law enforcement officers to the Defendant's residence and verified that it was the residence where he had delivered the methamphetamine. Castillo verified to agents that he had been in the Defendant's residence by drawing a diagram of the interior of the Defendant's home.

     Accordingly, with the information obtained from the Mount investigation and the additional information given to Detective Wilkinson by Agent Sams obtained from the Castillo investigation, Detective Wilkinson in the early morning hours of February 24,

2008 prepared the affidavit in support of a search warrant and presented it to a state judge who issued a search warrant for the Defendant's residence. The warrant was executed at 5:10 a.m. on February 24, 2008. During the execution of the search warrant at Defendant's residence law enforcement officers found approximately 32 grams of methamphetamine in plastic bags, four digital scales, ledgers, seven glass pipes, two police frequency scanners, wrapping materials, over $14,000 in cash, and 20 firearms including rifles, shotguns, handguns, ammunition and a loaded Ruger .357 revolver.

### III.  ANALYSIS

In his Motion To Suppress the Defendant raises only one challenge to the admissibility of the evidence seized during the execution of the search warrant. The Defendant contends that the affidavit in support of the search warrant prepared by Detective Wilkinson omitted material facts, which would have prevented the finding of probable cause if the omitted facts had been included.

The Defendant contends that the following facts with regard to the Mount investigation were omitted from the affidavit in support of the search warrant: (1) that Detective Wilkinson observed Mount drive by the Defendant's residence and proceed to the parking lot of Tarrytown Used Auto Parts before returning and entering Defendant's residence; (2) law enforcement had information that Mount sold large amounts of methamphetamine and marihuana from her Citrus County residence; (3) Citrus County law enforcement had information that Mount travels to Webster, Florida every other day to purchase methamphetamine from "Davey;" (4) after the arrest of Mount on February 21, 2008 she cooperated with law enforcement; and (5) during the execution of the search warrant on Mount's residence she lied to law enforcement when asked if she

5

had drugs in the residence.

The Defendant further contends that the following facts with regard to the investigation and arrest of Castillo were omitted from the affidavit in support of the search warrant: (1) Castillo had been arrested by DEA in Marion County on February 23, 2007 for trafficking in two pounds of methamphetamine, which is a felony of the first degree under state law punishable by a minimum mandatory term of imprisonment of 15 years and up to a maximum of thirty years and if charged federally would carry a minimum mandatory term of imprisonment of 10 years and up to a maximum of life imprisonment; (2) Castillo had told officers that there were eight pounds of methamphetamine at his residence in Oxford; (3) Castillo had been stopped by law enforcement for running a red light and during the search of his vehicle after a canine alert agents found two pounds of methamphetamine; (4) Castillo originally lied to law enforcement when he was stopped and arrested with regard to the identity of the individual for whom he was distributing the methamphetamine; (5) Castillo cooperated with law enforcement after he was stopped and arrested; and (6) agents found two unloaded revolvers in Castillo's Oxford residence.

The Defendant's motion is premised upon a *Franks* violation. In *Franks* the Supreme Court held that evidence seized under a search warrant should be suppressed where an agent submits a materially false statement in the affidavit and it appears that with the affidavit's materially false statement set to one side, the remaining content of the affidavit is insufficient to establish probable cause.[5] The Defendant bears the

---

[5] *Franks*, 438 U.S. at 171-72.

burden of proving by a preponderance of the evidence that the statements were false or made with reckless disregard and that the remaining facts contained in the affidavit are insufficient to support a determination of probable cause [6]  Thus, to establish a *Franks* violation the defendant must carry his burden of proving (1) that the alleged misrepresentations or omissions were knowingly or recklessly made by Detective Wilkinson, and (2) that the result of including the alleged omissions would have been a lack of probable cause for issuance of the warrant.[7] Defendant has completely failed to satisfy either prong of the *Franks* analysis.

### *A.     The Defendant Has Failed To Establish the First Prong of Franks*

Under the first prong of *Franks* the Defendant must establish that the affiant deliberately or recklessly included false statements, or failed to include material information in the affidavit.

There was no testimony presented at the hearing that suggested Detective Wilkinson deliberately or recklessly failed to include in the affidavit in support of the search warrant any information about the Mount investigation or any information about the Castillo investigation.

With regard to the Mount investigation, the only two pieces of information that Wilkinson did not include in the affidavit that she knew about was: (1) on the date of the surveillance of Mount, Wilkinson observed Mount drive by Fussell's residence before Mount drove through the gate and (2) the fact that Mount lied about having drugs in her

---

[6] United States v. Novaton, 271 F.3d 968, 986-88 (11th Cir. 2001).

[7] United States v. Jenkins, 901 F.2d 1075, 1080 (11th Cir. 1990).

residence when confronted by law enforcement at her home. Detective Wilkinson testified that she did not include this information because it was not important to establish that there was probable cause that drugs were located in Defendant's residence.

Further, the fact that Mount was known to sell drugs from her house and that she cooperated after law enforcement found drugs in her house were not included in the affidavit - according to Wilkinson - because these details were not important. Simply put, there was no testimony offered at the hearing from Detective Wilkinson that suggested she deliberately or recklessly omitted to include critical information about Mount in the affidavit in an effort to mislead the state judge who issued the search warrant. And as discussed in the section below addressing the second prong of *Franks,* this conclusion is underscored by the fact that most - if not all - of the omitted information about which Defendant complains actually bolsters probable cause rather than negates probable cause.

With regard to the omitted information relating to the Castillo investigation Defendant's argument is even further off of the mark. All of the information Detective Wilkinson included in the affidavit regarding the Castillo investigation was provided to her by Agent Gary Sams of the DEA. Detective Wilkinson was entitled to rely upon the information from Agent Sams because "observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their numbers" so long as "the affidavit recites at the outset or if it is clear from reading the affidavit as a whole that it is based in part upon

information obtained from other law enforcement officers."[8]  According to Detective Wilkinson, she did not omit any material information provided to her by Agent Sams. Specifically, Detective Wilkinson testified at the hearing that the details of the Castillo investigation, which Defendant contends were omitted from the affidavit, were never conveyed to her by Agent Sams. Thus, Detective Wilkinson did not - and could not have - deliberately omitted information that she did not even know.

      Recognizing that Detective Wilkinson could not omit information she was not aware of, Defendant's counsel changed course at the hearing and argued that under the "fellow officer" rule an officer supplying information to another officer cannot intentionally hide information from the other officer to avoid a challenge that the affiant omitted information. While the Defendant has not provided the Court with any legal support for this position, even if there was such a rule, it does not apply here because the testimony of Agent Sams demonstrated that Agent Sams did not provide Detective Wilkinson with all of the details of the federal investigation of Castillo because Detective Wilkinson was not part of the federal investigation nor were there any reasons for Agent Sams to tell Detective Wilkinson every detail of the investigation. Indeed, the primary reason Agent Sams met with Detective Wilkinson (and other SCSO officers) was to assist the DEA in searching Castillo's residence for the methamphetamine Castillo had told agents was located there.  Agent Sams specifically provided Detective Wilkinson with the additional information that Castillo had taken agents to Defendant's residence and drawn a diagram of the interior so that Wilkinson could provide facts for the state

---

[8] United States v. Kirk, 781 F.2d 1498, 1505 (11th Cir. 1986)(*citations omitted*).

judge to corroborate that Castillo had delivered large quantities of methamphetamine to Defendant's residence contemporaneous with the time period when Mount was observed going to Defendant's residence to buy methamphetamine. Thus, there was a complete absence of any evidence that Detective Wilkinson deliberately failed to include in the affidavit information about the Castillo investigation nor any evidence that Agent Sams deliberately or recklessly failed to tell Detective Wilkinson details of the Castillo investigation in order to mislead the neutral magistrate issuing the warrant.

Accordingly, for these reasons, the Court concludes that Defendant failed to satisfy his burden of presenting evidence to support the first prong of the *Franks* analysis. However, as discussed in detail below, even if the Defendant could have established that Detective Wilkinson deliberately omitted information, none of the omitted information about which Defendant complains would have impacted the finding of probable cause if the information had been included. Indeed, most of the omitted information further supports the finding of probable cause rather than negates the finding of probable casue.

**B.    *The Omitted Information Regarding the Mount Investigation Would Not Have Defeated the Finding of Probable Cause If It Had Been Included***

Defendant first argues that the affidavit was materially false because Detective Wilkinson did not disclose that Detective Wilkinson had observed Mount drive by Defendant's residence and proceed to the parking lot of Tarrytown Used Auto Parts before returning and entering Defendant's residence. This information was completely extraneous to the issue of probable cause - and if the information had been included in the affidavit the information would not have had any bearing (one way or the other) on

the determination of probable cause. This conclusion is fully supported by Detective Wilkinson's testimony at the hearing. Detective Wilkinson testified that the officers followed Mount to the parking lot after Mount drove past Defendant's residence. According to Detective Wilkinson, Mount never exited her vehicle while parked in the parking lot at Tarrytown Used Auto Parts and no one approached Mount's vehicle while she was parked there. After about fifteen minutes Mount proceeded to Defendant's residence. Because there is no evidence that Mount made any face to face contact with anyone else before going to Defendant's residence the fact that Mount stopped at the parking lot and waited before going to the Defendant's residence is completely divorced from the probable cause analysis.

Similarly, Detective Wilkinson's failure to include information in the affidavit that law enforcement knew Mount sold drugs or that Mount went to Webster every other day to purchase methamphetamine from "Davy" makes little difference. There was no mystery after reading the affidavit that Mount was both a chronic drug user and seller of drugs. Detective Wilkinson described Mount in the affidavit as an individual who "replenishes her supply of Methamphetamine every other day and normally purchases anywhere from a half of an ounce to two ounces of Methamphetamine." Thus, the state court judge who reviewed the affidavit was fully informed that Mount was heavily involved in drugs. Information that Mount sold those drugs from her house would have done nothing more than place an asterisk on the description of Mount as a drug dealer and therefore would have further supported probable cause rather than tending to negate probable cause. Similarly, information that Mount went to Webster every other day to buy drugs from "Davy" would have only further implicated the Defendant rather

than detracted from probable cause.

Defendant also argues that the affidavit was defective because Detective Wilkinson did not state that Mount cooperated with law enforcement. The affidavit, however, expressly discloses that Mount provided the information to law enforcement officers after she was read her *Miranda* rights and after law enforcement had searched her residence and had uncovered drugs. While the affidavit did not include the word "cooperate" there is no doubt that Mount provided the information voluntarily after she had been arrested as a result of the drugs discovered in her home. The reviewing state judge was thus fully informed that Mount was a drug dealer, who had been caught with drugs, arrested and then voluntarily provided information to law enforcement. The addition of the statement that Mount was cooperating would have added nothing to the probable cause calculus.

Lastly, Defendant argues that Detective Wilkinson failed to include a statement in the affidavit that during the execution of the search warrant on Mount's residence she lied to law enforcement when asked if she had drugs in the residence. While this statement may go to the issue of truthfulness in a very general sense, the fact that a drug dealer denies that she possesses drugs when confronted by law enforcement is common, to be expected and neither adds to nor detracts from the issue of whether Mount had purchased methamphetamine from the Defendant at his residence while under surveillance by law enforcement.

Accordingly, for these reasons, the information omitted from the affidavit by Detective Wilkinson concerning the Mount investigation, which is challenged by the Defendant, was not critical or even material to the determination of probable cause by

12

the state judge. Therefore, had Detective Wilkinson included this information in the affidavit the inclusion of the omitted information would not have defeated probable cause but rather (for the most part) added to the determination of probable cause.

### C.     The Omitted Information Regarding The Castillo Investigation Would Have Bolstered And Not Defeated The Determination of Probable Cause

There is no merit to Defendant's argument that Detective Wilkinson should have included information in the affidavit disclosing that: (1) Castillo had been arrested the day before for trafficking in two pounds of methamphetamine (which law enforcement found in Defendant's vehicle after a positive dog alert), a felony which would subject Castillo to a significant term of imprisonment in state[9] or federal court[10] if he had been convicted and (2) after law enforcement discovered two pounds of methamphetamine in his vehicle, Castillo told law enforcement that there were eight pounds of methamphetamine at his residence. As discussed above Detective Wilkinson did not have knowledge of these details. However, if she had known these details the inclusion of this information would have further supported probable cause rather than negated probable cause because this information would have further amplified that Castillo was a supplier of methamphetamine to the Defendant.

Similarly, there is no merit to Defendant's argument that Detective Wilkinson should have included in the affidavit that agents found two unloaded revolvers in Castillo's Oxford residence. While there was no evidence that Detective Wilkinson knew

---

[9] The penalty under state law is a minimum mandatory term of imprisonment of 15 years and up to a maximum of thirty years.

[10] The penalty under federal law is a minimum mandatory term of imprisonment of 10 years and up to a maximum of life imprisonment.

this information, even if she did, the fact that Castillo had two revolvers would be irrelevant to the determination of whether there was probable cause that there were drugs at Defendant's residence.

Lastly, the Defendant argues that Detective Wilkinson should have included in the affidavit the fact that Castillo cooperated with law enforcement and originally lied to law enforcement when he was stopped in his vehicle and arrested and confronted with regard to the identity of the individual for whom Castillo was distributing methamphetamine.

With regard to Castillo's cooperation it is abundantly clear in the affidavit that the information provided by Castillo was made voluntarily and *after* Castillo had been arrested and methamphetamine had been recovered from his vehicle and from his residence. As such, the fact of Castillo's cooperation was self evident from these facts and thus there was no reason to state the obvious in the affidavit. Further, to the extent that the Defendant is suggesting that there was a failure to disclose that Castillo had entered into a formal cooperation agreement with law enforcement the testimony at the hearing established that was not the case.  Agent Sams pointed out in his testimony that there was no cooperation agreement with Castillo at the time Detective Wilkinson applied for the search warrant and the decision as to whether to charge Castillo federally or in the state system had not yet been made. Accordingly, there was no information concerning cooperation that could have been included in the affidavit.

With regard to the fact that Castillo originally lied to law enforcement concerning his supplier, this fact was also unknown to Detective Wilkinson. However, even if

14

Detective Wilkinson had known that Castillo originally lied to the agents when he was stopped that information is not remarkable because the lie occurred during the course of a traffic stop and arrest. When Castillo was confronted by DEA agents Castillo then correctly identified his supplier (Onel Gomez) and led law enforcement to Castillo's residence where eight pounds of methamphetamine were stored. Moreover, the lie was not germane to whether there was probable cause that drugs were located at Defendant's residence because the Defendant was not alleged to be a supplier of drugs to Castillo but rather a purchaser of methamphetamine from Castillo.

In sum, Defendant's argument is built around the incorrect premise that a search warrant must include every piece of information known by law enforcement to make the warrant valid. That, of course, is not required. The only requirement is that law enforcement include sufficient information to establish probable cause based upon the totality of the information presented to the neutral magistrate. The affidavit submitted by Detective Wilkinson contains more than sufficient facts to establish that there was probable cause that methamphetamine was located in Defendant's residence on February 24, 2007. And had Detective Wilkinson known each omitted fact challenged by Defendant - and had she included each of these facts in the affidavit - the result would have been that there was even more probable cause to support the issuance of the search warrant, and not as Defendant contends, material information that would have negated the finding of probable cause.

## IV.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that Defendant's Motion To Suppress Physical Evidence (Doc. 33) should be **DENIED**.

**IN CHAMBERS** at Ocala, Florida this 28th day of July, 2008.

GARY R. JONES
United States Magistrate Judge

Copies to:
    Honorable Wm. Terrell Hodges
    Senior United States District Judge

    United States Attorney (Boggs)
    Counsel for Defendant