**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA,**

       **Plaintiff,**

**-vs-**                                                    **Case No.  5:08-cr-05-19-GRJ**

**PHILLIP DAVID FUSSELL,**

       **Defendant.**

_____

# ORDER

This case comes before the Court on the Motion of Defendant to Suppress Physical Evidence (Doc. No. 33, filed May 26, 2008); the Response of the United States in Opposition (Doc. No. 42, filed June 12, 2008); the Report and Recommendation of the United States Magistrate Judge (Doc. No. 50, filed July 28, 2008); and the Objection of Defendant to the Report and Recommendation (Doc. No. 51, filed Aug. 7, 2008).[1]

## Background

Defendant Phillip David Fussell is charged with Conspiracy to Possess with Intent to Distribute Methamphetamine in violation of 21 U.S.C. § 846, Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and Possession of a Firearm in Furtherance of a Drug Trafficking Offense in violation of 18 U.S.C. § 924(c).  (Doc. No. 1, filed Jan. 10, 2008.)  He moved to suppress all physical evidence seized during a search of his home, including the methamphetamine and firearms which he is accused of possessing.  (Doc. No. 33.)  Fussell contended that the warrant for the search of his home was based on a materially false

_____

[1]     The United States did not respond to Fussell's Objection.

affidavit, rendering the search unconstitutional under *Franks v. Delaware*, 438 U.S. 154 (1978). Fussell specifically argued that the affidavit failed to include information regarding the credibility two informants, Heather Mount and Exael Castillo-Pineda.

United States Magistrate Judge Jones held an evidentiary hearing on Fussell's motion on June 18, 2008.  Fussell called three law enforcement officers as witnesses: Detective Angela Wilkinson, Agent Gary Sams, and Agent Florentino Rosales.

At the evidentiary hearing, Detective Wilkinson testified that she is a detective with the Sumter County Sheriff's Office. (Doc. No. 64 at 17.)  She executed the affidavit at issue in this case. Detective Wilkinson became involved in the case on February 21, 2007, after being contacted by the Sheriff's Office for Citrus County (which borders Sumter County to the northwest) to assist in conducting surveillance of Heather Mount.  (*Id.* at 18.)  Citrus County officers believed that Mount was in route to purchase two ounces of methamphetamine from an individual named "Davey" in Sumter County.   (*Id.*)  Detective Wilkinson followed Mount through Sumter County to Fussell's residence. (*Id.* at 21-23.)  Mount initially drove past Fussell's residence and parked in a parking lot. (*Id.* at 22-23.)  After fifteen to twenty-five minutes, Mount left the parking lot and drove back to Fussell's home.  (*Id.*)   After leaving Fussell's home, Citrus County officers followed Mount back to her residence in Citrus County.  (*Id.* at 24.)  Citrus County officers then executed a search warrant of her home.  Their report indicates that during the search the officers found twenty-nine grams (approximately one ounce) of methamphetamine in Mount's purse and additional drugs throughout her home.  (Doc. No. 36 at 7.)  Mount told the officers that she had purchased the drugs from "Davey" in Sumter County.  (*Id.*)  Detective Wilkinson testified that she knew that "Davey" was Fussell's nickname.  (Doc. No. 64 at 19.)

Two days later, and by apparent coincidence,[2] Wilkinson encountered additional information about Fussell's residence.  Wilkinson testified at the hearing that DEA agents requested that Wilkinson meet with them to respond to a residence in Sumter Counter where they had found a large quantity of methamphetamine during a consent search.  (*Id.* at 30.)  Special Agent Gary Sams of the Drug Enforcement Agency ("DEA") told Wilkinson that Exael Castillo-Pineda ("Castillo"), who was the resident of the searched home, had been arrested.   (*Id.* at 30-31, 38.)  Sams also advised Wilkinson that the DEA had encountered a ledger listing a drug transaction with "Davey" from Webster in Sumter County.  (*Id.* at 40, 46.)    During questioning, Castillo revealed that "Davey" referred to Fussell.  (Doc. No. 37 at 2-3.)  Castillo told the DEA that he had delivered over fifty pounds of methamphetamine to Davey over the course of three months, including a delivery on the morning of February 23, 2008, the day on which Castillo was arrested.  (*Id.*)  To corroborate this information, Castillo brought law enforcement officers to Fussell's residence and verified that it was the place to which he had previously delivered methamphetamine.  (Doc. No. 64 at 55-56.)  Castillo also drew a diagram of the interior of Fussell's home to verify that he had been inside.  (*Id.*)

With the information obtained from the Mount investigation and the additional information given by Agent Sams, Detective Wilkinson executed an affidavit and obtained a search warrant for Fussell's residence.  (Doc. No. 34.)  The affidavit first describes the Mount investigation and, in detail, the surveillance of Mount's trip to Fussell's residence.  (*Id.* at 3.)  The affidavit also explains that after her arrest, Mount had advised officers that she purchased methamphetamine from "Davey" and "replenishes her supply of methamphetamine every other day and normally purchases anywhere

---

[2]      Wilkinson learned of the DEA investigation after being contacted by Agent Sams. (Doc. No. 64 at 30-31.)

from an ounce to two ounces . . . ." (*Id.*)  The affidavit next describes the information given by Agent Sams,  stating that "in order to recover a large amount of [m]ethamphetamine, . . . Sams advised that [the DEA] had arrested a Mexican male, Exael Castillo, and that they had recovered a large amount of [m]ethamphetamine[] from him." (*Id.*)  The affidavit then describes the information provided by Castillo, particularly that he had identified "David" in a ledger, confessed to delivering a large quantity of methamphetamine to Fussell, identified Fussell's residence, and then drew a diagram of the residence's interior.  (*Id.* at 3-4.)

Upon executing the search warrant for Fussell's residence, officers found approximately thirty-two grams of methamphetamine in plastic bags, four digital scales, over $14,000 in cash, and twenty firearms.  (Doc. No. 50 at 5.)

Fussell challenged the affidavit as being materially false due to several omissions regarding Mount's and Castillo's credibility.  (Doc. No. 33.)  In his Motion, Fussell contended Wilkinson knew, but failed to include in the affidavit, that Mount initially drove by Fussell's residence, went to a parking lot where she sat in her car for a period of time, and then turned around and returned to Fussell's residence.  (*Id.* at 3.)  Fussell next contended that the following information was known by the Citrus County Sheriff's Office and "at least constructively known . . ." by Wilkinson, but not included in the affidavit:

- Mount sold large amounts of methamphetamine and marijuana from her residence.

- Mount was identified by a confidential source as being a drug user.

- A confidential source purchased methamphetamine from Mount at her residence.

- Mount initially lied to the police about possessing narcotics.

(*Id.* at 4-6.)

Regarding Castillo, Fussell contended that the following information was "known by the [DEA], and at least constructively known . . ." to Wilkinson, but omitted from the affidavit:

- Castillo was arrested for drug trafficking and faced a mandatory minimum sentence of fifteen years under Florida law or a mandatory minimum sentence of ten years under federal law.

- Castillo was arrested while delivering methamphetamine to a confidential source.

- Castillo was arrested after running a red light and was determined to be an illegal immigrant.

- Castillo told agents that there was at least two pounds of methamphetamine in the vehicle.

- Castillo initially stated that he was on his was his way to a Walmart for a drug transaction with an unknown person.  But Castillo later admitted that he had lied and stated that he was en route to deliver the methamphetamine to a female named Irma.

- Castillo initially identified Manuel Gonzales as the individual for whom he distributed methamphetamine.  However, Castillo admitted that he had lied and stated that he distributed for Onel and Salvida Gomez.

- Castillo admitted that he cut and packaged drugs in the residence which had been searched by DEA officials.  He stated that there were eight pounds of methamphetamine in the attic and several guns in the house.  On these facts, Castillo could face up to a life sentence for violations of federal law.

(*Id.* at 6-10.)

Judge Jones issued a Report and Recommendation finding that the affidavit did not run afoul of *Franks*.  Judge Jones began by summarizing the relevant case law:

> The Defendant's motion is premised upon a *Franks* violation.  In *Franks* the Supreme Court held that evidence seized under a search warrant should be suppressed where an agent submits a materially false statement in the affidavit and it appears that with the affidavit's materially false statement set to one side, the remaining content of the affidavit is insufficient to establish probable cause.  The Defendant bears the burden of proving by a preponderance of the evidence that the statements were false or made with reckless disregard and that the remaining facts contained in the affidavit are insufficient to support a determination of probable cause.  Thus, to establish a *Franks* violation the defendant must carry his burden of proving (1) that the alleged misrepresentations or omissions were knowingly or recklessly made by Detective Wilkinson, and (2) that the result of including the alleged omissions would have been a lack of probable cause for issuance of the warrant.  Defendant has completely failed to satisfy either prong of the *Franks* analysis.

(Doc. No. 50 at 6-7 (citations omitted).)  On conclusion of the evidentiary hearing, Judge Jones analyzed both prongs of the *Franks* analysis.  First, he found that "[t]here was no testimony presented at the hearing that suggested Detective Wilkinson deliberately or recklessly failed to include in the affidavit in support of the  search warrant any information about the Mount investigation or any information about the Castillo investigation." (*Id.* at 7.) Wilkinson's testimony established that she omitted the information concerning Mount's lie to the Citrus County Sheriff's Office because she felt that it was not important to establish probable cause.  (*Id.* at 8.)

Judge Jones concluded that Fussell's arguments concerning the Castillo investigation were "even further off the mark" because an affidavit may rely on information supplied by another officer in a common investigation so long as it identifies the source of the information.  (*Id.* at 8-9.) Further, Fussell could offer no support for his argument that Wilkinson should be deemed to have constructive knowledge of all facts known by the DEA, and Judge Jones found that, in any event, the omitted information was withheld because it was not of importance.  (*Id.* at 9-10.)

-6-

Judge Jones next determined that the information regarding the Mount and Castillo investigations would have not have defeated probable cause even if it had been included. The fact that Mount made a detour before arriving at Fussell's residence was "completely extraneous" to the issue of probable case. (*Id.* at 10.) Further, the fact that she was a drug user was of little relevance and added to, rather than detracted from, the existence of probable cause. (*Id.* at 11-12.) Next, the fact that Mount cooperated with law enforcement was already implied by the statements included in the affidavit since it was obvious that she was arrested and then provided the information to the police. (*Id.* at 12.) Finally, the fact that Mount initially lied to the police about possessing drugs was neither surprising nor determinative of the veracity of her statements regarding Fussell. (*Id.*)

Regarding Castillo, Judge Jones explained that Castillo's admission that he possessed drugs actually bolstered the probable cause to believe that Fussell possessed drugs. (*Id.* at 13.) In addition, the fact that Castillo possessed firearms was of no relevance to whether Fussell possessed methamphetamine. (*Id.* at 14.) Similar to Mount, Castillo's cooperation with the police was obviously implied by the affidavit. (*Id.*) And finally, the fact that Castillo initially lied to the police was of no relevance because it occurred during a traffic stop and concerned the suppliers, not the purchasers, of Castillo's drugs. (*Id.* at 15.)

Judge Jones concluded that:

In sum, Defendant's argument is built around the incorrect premise that a search warrant must include every piece of information known by law enforcement to make the warrant valid. That, of course, is not required. The only requirement is that law enforcement include sufficient information to establish probable cause based upon the totality of the information presented to the neutral magistrate. The affidavit submitted by Detective Wilkinson contains more than sufficient facts to establish that there was probable cause that methamphetamine was located in Defendant's residence on February 24, 2007. And had Detective Wilkinson known each omitted fact challenged by Defendant -- and had she included each of these facts in the affidavit -- the result would have been that there was even more probable cause to

support the issuance of the search warrant, and not as Defendant contends, material information that would have negated the finding of probable cause.

(Doc. No. 50 at 15.)

## Standard of Review

A party seeking to challenge the findings in a Report and Recommendation of the United States Magistrate Judge must file "written objections which specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (quoting *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)).  If a party makes a proper objection, the District Court must conduct a *de novo* review of the portions of the report to which objection is made. *Id.* at 783-84. By contrast, general objections to a report and recommendation are reviewed for "clear error on the face of the record." *Id.* at 784.  After concluding its review, the District Court may accept, reject, or modify the Magistrate Judge's findings or recommendations. *Id.* at 784.

## Analysis

In *Franks v. Delaware*, 438 U.S. 154, 171 (1978), the Supreme Court held that a search warrant is void under the Fourth Amendment if the affidavit supporting the warrant contains "deliberate falsity or . . . reckless disregard" for the truth.  However, "when material that is the subject of the alleged falsity or reckless disregard is set to one side, [and] there remains sufficient content in the warrant affidavit to support a finding of probable cause[,]" then the warrant is valid. *Id.*  Negligent or innocent mistakes do not violate the Fourth Amendment. *Id.*

The Eleventh Circuit has explained that "[t]he reasoning in *Franks* also applies to information omitted from warrant affidavits." *Madiwale v. Savaiko*, 117 F.3d 1321, 1326 (11th Cir. 1997).   A warrant affidavit violates the Fourth Amendment when it contains omissions "made

intentionally or with a reckless disregard for the accuracy of the affidavit." *Id.* at 1326-27 (citing *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980)).[3]   The defendant need not show by direct evidence that the affiant made an omission recklessly. *Id.*   Rather, "it is possible that when the facts omitted from the affidavit are clearly critical to a finding of probable cause the fact of recklessness may be inferred from proof of the omission itself." *Id.* (quoting *Martin*, 615 F.2d at 329). "Omissions that are not reckless, but are instead negligent, or insignificant and immaterial, will not invalidate a warrant." *Id.* "Indeed, even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." *Id.* Where unsavory information relating to the background of an informant is omitted from an affidavit, the warrant is still valid if the statements are coupled with independent corroboration of the information by another person, or if the statements are so particular and detailed that they may be viewed as "self-corroborating." *United States v. Haimowitz*, 706 F.2d 1549, 1555-56 (11th Cir.1983).

Fussell's first objection is that Judge Jones erred by concluding that Wilkinson did not deliberately or recklessly omit information from the affidavit because Wilkinson testified that she omitted some facts that she felt were not important. According to Fussell, "[s]uch admissions by definition would make these omissions deliberate or at least in reckless disregard of the truth." (Doc. No. 51 at 4.) No legal authority is offered for this conclusion, and the Court was unable to find any support in the relevant case law. Courts have concluded that deliberateness or recklessness *may be inferred* from the omission of particularly relevant information, *Madiwale*, 117 F.3d at 1327,

---

[3]   All cases from the former Fifth Circuit handed down by the close of business on September 30, 1981, are binding on the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

but Fussell fails to point to any such omitted information. As explained by Judge Jones, and reiterated below, the omitted information was extraneous and in some cases actually bolstered probable cause.

Fussell next objects to Judge Jones's conclusion that an affiant may rely on statements made by other officers. Fussell contends that "Agent Sams cannot insulate the Affidavit from a *Franks* analysis by deliberately omitting to tell the Affiant relevant information about the credibility and reliability of the informant." (Doc. No. 51 at 5.) Fussell similarly argues that information of an undetermined credibility cannot be "filter[ed]" into credible information by merely passing through another law enforcement officer. (*Id.*) Fussell is correct to the extent that "a magistrate must be presented with facts as to the source of the information in the affidavit and the underlying circumstances from which it could be concluded that the source was reliable." *United States v. Kirk*, 781 F.2d 1498, 1504-05 (11th Cir. 1996). However, Judge Jones correctly concluded that the omitted information about Mount provided no serious challenge to her credibility and was not material to the issue of probable cause.

Fussell's next objection is that Mount's dual status as a drug dealer and chronic drug user detracts from the ability of her statements to establish probable cause. (Doc. No. 51 at 6.) As Judge Jones noted, this information would have provided no more than an "asterisk" to the affidavit's description of Mount as a drug dealer. (Doc. No. 50 at 11.) There is nothing surprising or unusual about a drug user such as Mount providing information about her alleged drug dealer. Cases against drug dealers are not always built on the testimony of wholly law abiding witnesses. *See, e.g.*, *United States v. Ewers*, 54 F.3d 419, 422 (7th Cir. 1995) ("Ewers repeats untiringly that Rhodes and Williams are bad people: past perjurers who got lower sentences in return for full cooperation with

the government. But that does not necessarily make their testimony unreliable; given the nature of the criminal world, testimony about drug amounts is often obtained from less-than-angelic witnesses, many of whom have cut a deal with the government. We would have a difficult time indeed in sentencing if only information from nuns and Boy Scouts were considered reliable."). Further, the fact that Mount traveled to Fussell's home every other day to purchase methamphetamine, a highly addictive drug,[4] gave the issuing judge some notice that Mount might be a drug addict. (*See* Doc. No. 64 at 79-80 (Judge Jones observing that the recounting of Mount's frequent drug purchases "allows the [issuing] judge to understand that Ms. Mount is a serious distributor of drugs, as well as someone who has obviously a serious personal involvement with drugs.").)

Next, Fussell argues that the Judge Jones misinterpreted his arguments concerning the effect of Mount's cooperation with police. Fussell contends that the possibility Mount would be charged with serious drug offenses gave her an incentive to manufacture testimony about Fussell; therefore, the judge who issued the warrant should have been apprised of this possibility. (Doc. No. 51 at 7-8.) However, Judge Jones appears to have fully understood this argument, and he correctly rejected it. (Doc. No. 50 at 12.) Judges are likely to know that a person who was arrested on drug charges has an incentive to provide the government with information about her suppliers and purchasers. The affidavit clearly states that Mount was arrested with drugs, and her incentive to provide information against Fussell did not need to be explained to the issuing judge. As Judge Jones correctly concluded, there was no need to state the obvious. (*Id.* at 14.)

---

[4]     Methamphetamine is listed as a Schedule II drug under the Controlled Substances Act due to its high potential for dependency. 21 U.S.C. § 812.

Fussell next contends that Mount's lie to the police was germane to the existence of probable cause because it demonstrates that she is not a credible witness. (Doc. No. 51 at 7-8.) Again, this objection is based on the mistaken contention that probable cause can be built only on the testimony of impeccable witnesses. In addition, as Judge Jones noted, there was nothing unusual about the fact that Mount and Castillo initially lied to the police about their possession of drugs. (Doc. No. 50 at 12.) The fact that these witnesses lied initially but then cooperated with the police is not a fact which, if revealed, would defeat probable cause.[5]

Next, Fussell repeats several of these objections with respect to Castillo's specific statements. (Doc. No. 51 at 8-9.) The Court rejects these arguments for the same rationale as is stated above with respect to Mount. Further, much of the omitted information regarding the Castillo investigation would bolster probable cause in this case. The DEA's investigation into Castillo originated as part of an investigation into Onel Gomez, Castillo's supplier. (Doc. No. 64 at 50-51.) When Castillo was arrested and identified Manuel Gomez as the source of the methamphetamine, DEA agents knew that Castillo was lying because they had arranged the transaction with Onel Gomez, not Manuel Gomez. (*Id.* at 51-52.) Thus, when Castillo changed course and identified Onel and Salvida Gomez as his suppliers, the DEA knew Castillo was starting to tell the truth. (*Id.*) It was after this conversation that Castillo arrived at his house, identified the ledger recording the transactions with "Davey," and explained his relationship with Fussell. (*Id.* at 52.) By the time Agent Sams had spoken with Detective Wilkinson, the DEA had no reason to believe that Castillo was being dishonest. (*Id.* at 53.)

---

[5]     According to Agent Sams, " [in] [a]lmost every case I work, initial statements are false; and then as we develop our investigation, we usually get to the truth, which we did in this case." (Doc. No. 64 at 48.)

Fussell next objects to Judge Jones's purported conclusion that Castillo's diagram bolstered Castillo's credibility as a witness.  (*Id.* at 10.)  Judge Jones did not make this finding, and Fussell's objection is therefore overruled.  (*See* Doc. No. 50 at 13-16.)

Finally, Fussell explains:

The Defendant objects to the determination of the Report and Recommendation that the only requirement of an affidavit for [a] search warrant is that law enforcement include sufficient information to establish probable cause based upon the totality of the information presented to the neutral magistrate.  Defendant asserts the duty of law enforcement is not simply to include selected portions of relevant information known to them that will establish probable cause, but rather to include in the affidavit all relevant and material information so that the neutral detached magistrate can make a fully informed independent decision regarding the existence of probable cause.

(Doc. No. 51 at 10.)[6]

There is no serious dispute that law enforcement officers must include "relevant and material information" in an affidavit, *e.g.*, *United States v. Umansky*, No. 07-13399, 2008 WL 3890160, at *1 (11th Cir. Aug. 22, 2008), and Judge Jones did not conclude otherwise.  The information omitted from the affidavit was immaterial and of very limited relevance.  Thus, as Judge Jones observed, Fussell's argument for the inclusion of this evidence boiled down to a contention that the police must include every known fact in an arrest-warrant affidavit.  The law clearly holds otherwise. *Madiwale*, 117 F.3d at 1326.  Furthermore, common sense dictates that law enforcement officers

---

[6]     Pages eleven through seventeen of Fussell's Objection appear to contain general legal arguments which are not directed at any specific portion of Judge Jones's Report and Recommendation.  General challenges to a report and recommendation are reviewed for clear error.  *Macort*, 208 F. App'x at 783.  Upon a review of the Report and Recommendation, the Court is satisfied that Judge Jones applied the correct legal standard, did not ignore any controlling legal provision, and did not commit any clear legal or factual error.

attempting to procure a search warrant cannot be expected to execute voluminous affidavits containing every conceivable piece of information.

In any event, probable cause would still be established by the affidavit even if all of the omitted information were included.  Law enforcement officers had intelligence indicating that Mount was in route to purchase methamphetamine, and they observed Mount drive to Fussell's home, initially pass Fussell's home, return and go into Fussell's home,[7] and then return to her home. (Doc. No. 34 at 3.)  Upon arriving at her home, police arrested Mount and found methamphetamine in her purse.  (*Id.*)  These facts are indicative of a drug transaction at Fussell's home.  *See United States v. Hurd*, 499 F.3d 963, 967 (9th Cir. 2007); *United States v. Cabrera-Reynoso*, 195 F.3d 1029, 1031 (8th Cir. 1999) (collecting cases).  Further, the detailed information contained in the affidavit was specific enough to be "self-corroborating" of Mount's and Castillo's testimony.  *Haimowitz*, 706 F.2d at 1555.  And, as explained above, the omitted information concerning the Castillo investigation actually bolstered the existence of probable cause by corroborating Castillo's statements.  Thus, the inclusion of this additional information would not defeat probable cause.  *See id.*

Accordingly, Fussell's challenge to the affidavit fails, and the evidence seized from his home should not be suppressed.

---

[7]   At the hearing, Wilkinson testified that Mount initially drove by Fussell's home, parked in a parking lot for fifteen to twenty-five minutes, and then returned to Fussell's home. (Doc. No. 64 at 22-23.)  Wilkinson did not see Mount leave the car or make contact with anyone. (*Id.*)

**Conclusion**

Based on the foregoing, the Court **ADOPTS** the Report and Recommendation of the United States Magistrate Judge (Doc. No. 50, filed July 28, 2008) and **OVERRULES** the objections of Defendant.  The Motion of Defendant to Suppress Physical Evidence (Doc. No. 33, filed May 26, 2008) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on October 7, 2008.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record

-15-