UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

-vs-                                                    Case No.  5:08-cr-5-Oc-19GRJ

PHILLIP DAVID FUSSELL
       a/k/a "Davy",

                              Defendant.
_____

# ORDER

This case comes before the Court on the following:

1.      Motion for Release Pending Sentencing by Defendant Phillip David Fussell (Doc.
        No. 88, filed Oct. 26, 2008);

2.      Motion for New Trial by Defendant (Doc. No. 89, filed Oct. 30, 2008);

3.      Response in Opposition to Defendant's Motion for Release Pending Sentencing by
        the United States of America (Doc. No. 90, filed Nov. 11, 2008); and

4.      Response in Opposition to Defendant's Motion for New Trial by the United States
        (Doc. No. 91, filed Nov. 14, 2008).

## Background

Following a jury trial, Defendant was convicted on October 23, 2008 of (1) conspiracy to
distribute and possess with intent to distribute 500 grams or more of a mixture or substance
containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 846 (2006), and (2)
possession with intent to distribute a mixture and substance containing a detectable amount of

methamphetamine in violation of 21 U.S.C. § 841(a)(1).  (Doc. No. 84 at 1-2, filed Oct. 23, 2008.)

Defendant was found not guilty of possession of a firearm in furtherance of a drug trafficking

offense in violation of 18 U.S.C. § 924(c) (2006).  (*Id.* at 2.)

Immediately following trial, Defendant was remanded into the custody of the U.S. Marshal

to await sentencing.  (Doc. No. 82, filed Oct. 23, 2008.)  The Court denied Defendant's request for

release pending sentencing but granted Defendant leave to submit a written motion to the Court.

Since that time, Defendant has filed a Motion for Release of the Defendant Pending Sentencing

(Doc. No. 88), and the Government has filed a Response in Opposition to Defendant's Motion (Doc.

No. 90).  Defendant has also filed a Motion for a New Trial (Doc. No. 89), and the Government

responded with an Opposition to Defendant's Motion for New Trial (Doc. No. 91).

**Analysis**

**I.      Motion for New Trial**

Defendant moves for a new trial under Rule 33 of the Federal Rules of Criminal Procedure

which provides in relevant part that "[u]pon the defendant's motion, the court may vacate any

judgment and grant a new trial if justice so requires."  Fed. R. Crim. P. 33(a).  As grounds for his

Motion, Defendant argues that the Court made seven erroneous evidentiary rulings prior to and

during trial.  (Doc. No. 89 at 2-3.)

As his first two grounds, Defendant contends that the Court erred by (1) denying his Motion

to Suppress and overruling his Objection to the Report and Recommendation of the U.S. Magistrate

Judge to deny his Motion to Suppress, and (2) permitting the introduction of such evidence at trial.

(*Id.*)  Defendant, however, has offered no new grounds for the Court to reconsider its October 7,

2008 decision. (Docket Number 66). The Court perceives no plain error in its earlier rulings and therefore finds Defendant's first two arguments for a new trial to be without merit.

Next, Defendant asserts that the Court erred in overruling his objection to the admissibility of Government's Exhibit 1 on the ground that this exhibit was hearsay. (*Id.* at 3.) Government's Exhibit 1 is the notebook of Exael Castillo-Pineda, a trial witness for the Government. In his testimony under oath Mr. Castillo-Pineda identified the notebook, stated that he made the entries in the notebook, and explained the meaning of his notations. The Court admitted this exhibit over Defendant's objection on hearsay grounds. This ruling was not in error because the notebook was offered as a statement by a coconspirator of Defendant during the course and in furtherance of the conspiracy and therefore constitutes non-hearsay under Federal Rule of Evidence 801(d)(2)(E).

"For a declaration by one defendant to be admissible against other defendants under [Federal Rule of Evidence 801(d)(2)(E)], the government must establish by a preponderance of the evidence: (1) that a conspiracy existed, (2) that the defendant and the declarant were members of the conspiracy, and (3) that the statement was made during the course and in furtherance of the conspiracy." *United States v. Harrison*, 246 F. App'x 640, 651 (11th Cir. 2007) (quoting *United States v. Van Hemelryck*, 945 F.2d 1493, 1497-98 (11th Cir. 1991) (alteration in original)). "Although the preferred method of proving these requirements is in a hearing prior to the admission of the evidence, it is nevertheless within the court's discretion to admit the alleged co-conspirator statements subject to be proven during trial." *Id.* at 652 (citing *United States v. Fernandez*, 797 F.2d 943, 945 (11th Cir. 1986)). "In determining the admissibility of co-conspirator statements, the trial court may consider both the co-conspirator's statements and independent external evidence." *Id.* (quoting *United States v. Magluta*, 418 F.3d 1166, 1178 (11th Cir. 2005)). The Eleventh Circuit

"applies a liberal standard in determining whether a statement is made in furtherance of a conspiracy." *Id.* (quoting *United States v. Miles*, 290 F.3d 1341, 1351 (11th Cir. 2002)). For instance, statements "made solely to aid the concealment" of a conspiracy are considered statements made during and in furtherance of the charged conspiracy. *Id.* (quoting *United States v. Griggs*, 735 F.2d 1318, 1325 (11th Cir. 1984) (per curiam)).

During trial, the United States presented ample evidence of Defendant's conspiracy to distribute and possess with intent to distribute methamphetamine, as well as Mr. Castillo-Pineda's involvement in this conspiracy. As a summary, the evidence showed that the investigation leading to Defendant's arrest began in April of 2006 and involved law enforcement officials from Citrus County, Sumter County, and the U.S. Drug Enforcement Administration ("DEA"). At that time, a victim of a home invasion (the "confidential informant" or "CI") in the Marion Oaks Subdivision became cooperative with law enforcement about drug activity in the area and told officers about the CI's involvement with two Mexican drug traffickers, Salvadore and Onel Gomez. The Gomez brothers allegedly trafficked in methamphetamine and cocaine.

In June and July of 2006, law enforcement made a series of undercover and controlled drug buys from the Gomez brothers. On February 23, 2007, the CI made a drug deal with Onel Gomez, who sent Mr. Castillo-Pineda to deliver the drugs. Law enforcement stopped Mr. Castillo-Pineda in route and discovered two bags of methamphetamine hidden in stuffed animals inside his vehicle. Later, Mr. Castillo-Pineda consented to a search of the stash house in Oxford where he resided, and agents discovered small amounts of methamphetamine in the kitchen cabinets, MSM (a cutting agent) in the pantry, eight pounds of methamphetamine buried in a cooler in the backyard, and a blue notebook with names, dates, numbers, and Spanish words written inside of it.

While the agents were at his home, Mr. Castillo-Pineda admitted that he had delivered large amounts of methamphetamine to "Davey." Specifically, he confirmed that he had recently delivered $15,000 worth of methamphetamine to Davey and had been delivering a pound of methamphetamine per day to Davey for about three months. Mr. Castillo-Pineda then led officers to Davey's house, which was the home of Defendant. Mr. Castillo-Pineda described the inside of Defendant's home, and with him DEA Agent Florentino Rosales drew a sketch of what Mr. Castillo-Pineda described.

On February 24, 2007, the Sumter County SWAT team, drug unit officers, and DEA officials executed a search warrant on Defendant's home. Outside the home officials discovered a camera and surveillance equipment. Inside, agents found three cell phones, numerous unused baggies, one large baggie with methamphetamine residue inside, a police scanner, guns, twelve baggies containing methamphetamine weighing a total of eight pounds, and several weight scales as well as bundled cash. Agents also discovered that the surveillance equipment observed outside the home was connected to a television inside of the home. Defendant was then arrested on state charges and later indicted on federal charges.

At trial, DEA Agent Gary Sams testified that he found the blue notebook on the kitchen counter of Mr. Castillo-Pineda's home during this search. Agent Sams identified this notebook as Government's Exhibit 1, and Defendant objected to its admissibility as hearsay. The Government responded that the notations inside of the notebook were statements of a coconspirator who would be testifying later at trial. The Court permitted identification of the exhibit by Agent Sams but sustained Defendant's objection as to its admissibility through this witness.

Other Government witnesses also testified about Government's Exhibit 1. Agent Rosales testified that he spoke with Mr. Castillo-Pineda in Spanish about the contents of the notebook.

Agent Rosales stated that Mr. Castillo-Pineda explained to him that the notebook contained records of drug sales, including an entry stating that "Deyvi" owed him $15,000.

Mr. Castillo-Pineda also testified at trial with the assistance of a Spanish speaking interpreter. He identified Government's Exhibit 1 as his notebook, confirmed that he had previously discussed the notebook's entries with a Spanish-speaking police officer, and explained the meaning of the notations inside the notebook as records of his deliveries of drugs and receipts of payment. He also confirmed that he delivered drugs on behalf of the Gomez brothers, delivered methamphetamine to "Deyvi" about fifty times, and identified Defendant in the courtroom as "Deyvi," the person named in his notebook to whom he had delivered the drugs. After hearing this testimony, the Court admitted Government's Exhibit 1 over Defendant's objection.

Thus, the evidence at trial established, by a preponderance of the evidence, that a conspiracy existed to distribute and possess with intent to distribute a substance or mixture containing detectable amounts of methamphetamine, that Defendant and Mr. Castillo-Pineda were members of this conspiracy, and that statements entered in Mr. Castillo-Pineda's notebook by him were statements made during and in the furtherance of the conspiracy. Therefore, the Court properly admitted Government's Exhibit 1 as non-hearsay under Federal Rule of Evidence 801(d)(2)(E), and a new trial is not appropriate on this ground.[1] *United States v. Smith*, 918 F.2d 1501, 1510-11 (11th Cir. 1990).

---

[1]     Other jurisdictions have found that drug ledgers are admissible non-hearsay because such records are "tools of the trade" in narcotics cases. *E.g.*, *United States v. Mendez*, 514 F.3d 1035, 1045 (10th Cir. 2008); *United States v. Nava-Salazar*, 30 F.3d 788, 798 (7th Cir. 1994); *see also United States v. Alosa*, 14 F.3d 693, 696 (1st Cir. 1994) (drug ledgers are "real evidence" of a narcotics conspiracy and not hearsay).

In his fourth claim of error, Defendant argues that the Court improperly overruled his objection to the admissibility of Government's Exhibits 19(a) through (z) on the grounds that these photographs did not fairly and accurately represent what they purported to depict. Federal Rule of Evidence 901 states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." At trial, Sumter County Narcotics Detective Angela Wilkinson testified that she participated in the search of Defendant's home. She reviewed the pictures and stated that they fairly and accurately depicted what she saw inside the home on the morning of the execution of the search warrant. She admitted that she did not take the pictures, but she testified as to the authenticity of the images that the photographs purported to depict. Defense counsel elicited testimony in his cross-examination of Detective Wilkinson about certain items that had been moved in the photograph from their original position in the home, but such testimony did not undermine the authenticity of these exhibits.

The Government also presented Sumter County Deputy Timothy Lundy as a trial witness, and he stated that he personally took the photographs. He explained that he took the photographs of the exterior of Defendant's home while the SWAT team was entering the home and serving the search warrant, and then he took the pictures of the interior of the home once it had been secured. He also testified as to the authenticity of the photographs and explained that he personally collected some of the evidence depicted in the photographs. Thus, the testimony of Detective Wilkinson and Deputy Lundy was sufficient to support a finding that the photographs admitted into evidence as Government's Exhibits 19(a)-(z) fairly and accurately represented the inside of Defendant's home

at the time the search warrant was executed.   The Court did not err in overruling Defendant's objection.

Next, Defendant argues that the Court erred in overruling his objection to admitting evidence retrieved from Defendant's house through Deputy Lundy on the grounds that he had not originally located the evidence and there had been no demonstration of a chain of custody from the time Deputy Lundy submitted it into the secure evidence locker at the Sumter County Sheriff's Office until he identified these items at trial.   The Eleventh Circuit of Appeals has "long recognized that 'gaps in the chain of custody affect only the weight of the evidence and not its admissibility.'" *United States v. Jones*, 266 F. App'x 886, 890 (11th Cir. 2008) (quoting *United States v. Roberson*, 897 F.2d 1092,. 1096 (11th Cir. 1990)).   In this case, Detective Lundy testified that he collected the evidence from Defendant's house and gave all of this evidence to the Sumter County evidence vault technician pursuant to established law enforcement procedures.   Also, Lab Analyst Amanda Casto testified that she tested the narcotics evidence twice and personally examined this evidence each time to ensure the evidence bag seals were intact.   Thus, the Government presented ample competent testimony demonstrating that the evidence presented at trial was the evidence seized from Defendant's home, and the Court did not err in admitting this evidence at trial.

In addition, Defendant argues that the Court erred in denying his oral Motion for Judgment of Acquittal.   Rule 29 of the Federal Rules of Criminal Procedure states that "a court on the defendant's motion must enter a judgment of acquittal as to any offense for which the evidence is insufficient to sustain a conviction."   In considering such a motion, the Court must construe all facts and draw all inferences in the light most favorable to the Government.   *United States v. Descent*, 292 F.3d 703, 706 (11th Cir. 2002).   The Court should decide whether a reasonable fact-finder could

conclude that the evidence established Defendant's guilt beyond a reasonable doubt.  *Id.* (citation omitted).   The Government presented numerous witnesses that admitted to being involved in Defendant's conspiracy to distribute and possess with intent to distribute methamphetamine.  As explained in more detail previously, law enforcement discovered eight pounds of methamphetamine at Defendant's house.  Construing the evidence in the Government's favor, a reasonable fact-finder could conclude that the evidence established Defendant's guilt on Counts I and II of the Indictment beyond a reasonable doubt.  Therefore, the Court rejects Defendant's argument that the denial of his Motion for Judgment of Acquittal was erroneous.

Lastly, Defendant claims as error the fact that the Court overruled his objection to the reference by the Government in its closing argument to evidence concerning Heather Mount on the grounds that matters concerning Ms. Mount had been excluded from evidence during trial based on a hearsay objection of Defendant.   (Doc. No. 89 at 3.)  As the Court stated on the record at trial, testimony on matters concerning Ms. Mount was not excluded from evidence.  Detective Wilkinson testified as to her observations of Ms. Mount.   In addition, Detective Kevin Davenport gave testimony concerning Heather Mount that was not excluded from evidence.  The name "Heather" was also written in a drug ledger recovered from Defendant's house.  Therefore, Defendant's claim of error on this ground is rejected.

The Court finds no bases for reconsideration of the evidentiary rulings made at trial.  Moreover, even if the evidentiary rulings made by the Court at trial were erroneous, the Court finds that any such error was harmless.  Under Rule 52 of the Federal Rules of Criminal Procedure, "Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."

Thus, the Court concludes that the interests of justice do not require a new trial; therefore, the Court denies Defendant's Motion for a New Trial (Doc. No. 89).

## II.    Motion for Release from Custody Pending Sentencing

Immediately following Defendant's conviction at the conclusion of his jury trial, the Court remanded Defendant into the custody of the U.S. Marshals under the mandatory detention provision, 18 U.S.C. § 3143(a)(2).  This provision states that a "judicial officer shall order that a person who has been found guilty of an offense in a case in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained" unless the person meets one of the following two exceptions:

> (A)  (i)   the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or
>
> (ii)  an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and
>
> (B)  the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

*Id.*

In determining whether this provision was applicable to Defendant, the Court reviewed 18 U.S.C. § 3142(f)(1)(C) which describes "an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act (21 U.S.C. 801 *et seq.*) . . . ."  The Controlled Substances Act states in part that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."  21 U.S.C. § 846. Because Defendant was found guilty of the offense of conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of

-10-

methamphetamine, he is subject to the penalties prescribed for the offense that was the object of the conspiracy: possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1).

Title 21, Section 841 of the United States Code provides that any person whose offense under Section 841(a) involves 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine "shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . . ." 21 U.S.C. § 841(b)(1)(A)(viii); *id.* at 841(b)(1)(A) (last paragraph). Thus, Defendant's maximum statutory sentence is greater than ten years, his offense is in the category of offenses described in 18 U.S.C. § 3142(f)(1)(C), and his detention is mandatory pursuant to 18 U.S.C. § 3143(a)(2).

Defendant argues that the United States Code provides an additional exception to the mandatory detention requirements of 18 U.S.C. § 3143(a)(2). (Doc. No. 88 at 2, ¶ 5.) Specifically, Defendant asserts that the Court has discretion to release Defendant pending sentencing under the authority of 18 U.S.C. § 3145(c). (*Id.*) This Section provides:

> An appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by the provisions of section 1291 of title 28 and section 3731 of this title. The appeal shall be determined promptly. A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

18 U.S.C. § 3145(c). The Government argues in response that this provision grants the discretionary authority to release a defendant only to an appellate court and not to a district court. (Doc. No. 90 at 2.) In the alternative, the Government asserts that Defendant has failed to show that this Section

applies because he has not demonstrated exceptional reasons why his detention would not be appropriate. (*Id.* at 3.)

Both parties recognize that there is no binding precedent in the Eleventh Circuit on the issue of whether 18 U.S.C. § 3145(c) grants authority to district courts to release a defendant from custody pending sentencing, and they both note that courts deciding the issue have reached differing conclusions.[2] (Doc. No. 88 at 7; Doc. No. 90 at 2.)  This Court need not decide the issue, however, because even if 18 U.S.C. § 3145(c) permitted the Court to release Defendant pending sentencing, Defendant has failed to clearly show that there are exceptional reasons why his detention would not be appropriate as required by this provision.

Defendant states the following reasons for his release pending sentencing: Defendant has no significant criminal history prior to this case, Defendant was gainfully employed at all times when he was not incarcerated prior to trial, Defendant was arrested on state charges and released from the Sumter County Jail after posting a surety bond, Defendant cooperated with federal agents prior to his federal indictment, Defendant voluntary surrendered to federal agents upon learning of the federal warrant issued for his arrest based on the federal indictment, the U.S. Magistrate Judge authorized his pretrial release on special conditions, Defendant satisfactorily complied with his conditions of release and participated in "two additional Rule 11 Proffers" with federal officials, Defendant's assistance prior to trial has been "fully accurate, helpful, and complete," Defendant would have pled guilty if the Government dismissed the firearms charge, reversal of this Court's denial of his Motion to Suppress would result in a reversal of his conviction and would require at

---

[2]    This issue also involves the question of whether such release is permitted when no appeal is pending as in the instant case. However, the Court need not address this issue because this matter is decided on other grounds.

least a new trial, and Defendant's parents are each approximately 80 years of age.  (Doc. No. 88 at 2-5.)

Though the statute does not define the word "exceptional," the word's common meaning is "out of the ordinary," "uncommon," or "rare."  *United States v. Koon*, 6 F.3d 561, 563 (9th Cir. 2003) (Rymer, J., concurring with order denying rehearing *en banc*) (quoting Webster's Third New International Dictionary 791 (1986) (unabridged)).   Exceptional reasons present "a unique combination of circumstances giving rise to situations that are out of the ordinary."  *United States v. Herrera-Soto*, 961 F.2d 645, 647 (7th Cir. 1992) (quoting *United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir. 1991)).  Exceptional reasons also go beyond the basic threshold requirements for the applicability of 18 U.S.C. § 1345(c) set forth in 18 U.S.C. § 3143(a)(1): that the judicial officer "finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . ."  *E.g.*, *United States v. Herrera-Soto*, 961 F.2d 645, 647-48 (7th Cir. 1992) (finding that no exceptional circumstances existed when "the district court cited nothing beyond the necessary requirements of a substantial issue on appeal to constitute an 'exceptional reason' meriting release pending appeal"); *Koon*, 6 F.3d at 563-64 (Rymer, J., concurring); *United States v. Devinna*, 5 F. Supp. 2d 872, 873 (E.D. Cal. 1998) ("The defendant must show something more than the fact he is unlikely to flee and poses no danger to others.")

The reasons that Defendant has offered to support his release are not exceptional.  To begin, almost all defendants facing incarceration have personal family hardships; the age of Defendant's parents does not make his situation exceptional.  *United States v. Cook*, 42 F. App'x 803, 804 (6th Cir. 2002) (affirming the decision of the district court that hardship to family or business associates

-13-

is not an exceptional circumstance under 18 U.S.C. § 3145(c)); *United States v. Bryant*, 873 F. Supp. 660, 663 (N.D. Ga. 1994) (citing cases).  In addition, cooperation with the government, compliance with pretrial supervision, and continued employment also do not constitute exceptional reasons. *Cook*, 42 F. App'x at 804; *United States v. Mostrom*, 11 F.3d 93, 95 (8th Cir. 1993).  Finally, the legal grounds raised in Defendant's Motion to Suppress,[3] the denial of which Defendant intends to appeal, are not particularly novel, complex, or extraordinary.  *Herrera-Soto*, 961 F.2d at 647 ("[In his appeal, the defendant] offers a challenge to the conduct of his trial.  There is nothing out of the ordinary about the circumstances of this case that causes this appellate issue, although arguably meritorious, to transform [the defendant's] circumstances into exceptional reasons meriting release pending appeal.").  Thus, Defendant has not clearly shown that there are exceptional reasons why his detention would not be appropriate, and release would therefore be inappropriate under 18 U.S.C. § 3145(c).

## Conclusion

Based on the foregoing, the Motion for Release Pending Sentencing by Defendant Phillip David Fussell (Doc. No. 88, filed Oct. 26, 2008) is **DENIED**, and the Motion for New Trial by Defendant (Doc. No. 89, filed Oct. 30, 2008) is also **DENIED**.

---

[3]     As previously described by this Court, Defendant moved to suppress all physical evidence seized during a search of his home, including the methamphetamine and firearms he was charged with possessing.  (Doc. No. 66 at 1.)  Defendant contended that the warrant for the search of his home was based on a materially false affidavit, rendering the search unconstitutional.  (*Id.* at 1-2.)  After an evidentiary hearing, this contention was rejected by the U.S. Magistrate Judge, and this Court adopted the Report and Recommendation of the Magistrate Judge over Defendant's objection and denied Defendant's Motion to Suppress.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on November 14  , 2008.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record
Defendant